ALBION MILLING COMPANY v. FIRST NATIONAL BANK OF WEEPING WATER ET AL.

FILED MARCH 5, 1902. No. 11,293.

Commissioner's opinion, Department No. 2.

1. **Brief: ARGUMENT: INSTRUCTIONS: ASSIGNMENT OF ERROR: CONSIDERATION.** Where, in an argument and brief, error is assigned for giving and refusing a group of instructions and **no reason**

is pointed out, or authorities cited, by or from which the court can determine the several questions involved in the assignment, the matter should receive no consideration.

2. Faulty Answer: REPLY: REQUEST FOR INSTRUCTION: REFUSAL. Where an answer is faulty, but is replied to and treated by the plaintiff as sufficient during the whole trial and proceedings, the court should refuse to instruct the jury, at plaintiff's request, that certain of the facts alleged in the petition were not denied by such answer.

3. Financial Worth: HONEST OPINION: LIABILITY. Where one gives an honest opinion as to the financial worth and standing of a third party, and as to whether or not such third party is entitled to credit, based on information, which information he imparts to the person making the inquiry at the time such opinion is given, the mere fact that he was mistaken in his opinion will not make him liable in an action for fraud and deceit, to one who acts thereon.

4. Verdict. Where it is clear, from the law and the evidence, that the verdict returned by the jury is the only one which can be sustained in the case, it will not be set aside for errors occurring at the trial.

ERROR from the district court for Cass county. Tried below before RAMSEY, J. *Affirmed.*

*Nelson C. Pratt,* for plaintiff in error

*J. E. Douglass, contra.*

BARNES, C.

This action was commenced in the district court of Cass county by the plaintiff herein against the defendants for fraud and deceit alleged to have been practiced upon it by defendants, by making false statements in regard to the business character, financial standing, and responsibility of a third party, to wit, one S. M. Prouty, who was engaged in selling flour and other milling products in the village of Weeping Water, Cass county, Nebraska, and also as to the advisability of extending credit to him. The petition was in the usual form, and the facts stated therein, if true, were sufficient to constitute a cause of action. The answer of the defendants, though not closely or carefully

drawn, or couched in apt legal phrase, in substance denied the material allegations of the plaintiff's petition. To this answer the plaintiff filed a reply. The case was duly tried and the jury returned a verdict for the defendants. A motion for a new trial was overruled, judgment was entered for the defendants upon the verdict, and plaintiff brings the case to this court by petition in error.

The only evidence offered by the plaintiff in support of the allegations of its petition, as to the false and fraudulent representations complained of, was given by one Mr. Elliott. After testifying that he had received a letter from Mr. Prouty stating that he, Prouty, wished to handle the plaintiff's milling products, and would like credit in the transaction for about $500, the witness was interrogated and further testified as follows:

Q. You may state what, if anything, you did after you received that letter, Mr. Elliott.

A. I called up the First National Bank of Weeping Water,—called the central office, and asked for the president or cashier of the First National Bank. She called back and said that the president was out, but the cashier was there, and had a talk with him. I told him that Mr. Prouty had been talking with us about buying some flour, and asked the First National Bank,—or, rather, the cashier,—and asked him what he knew; and he said he had been there for some time in business; he seemed to be doing well himself, and they kept his account there at the bank; that he asked them for no funds; as so far as he knew he was getting along nicely. He then asked me about what the probable amount would be. I told him about $500, and he said "Yes; I should say he would be good for that amount easily"; he didn't owe them anything.

This conversation over the telephone was claimed to have taken place on the 28th day of October, 1896. Defendant Murtey, the other party to the conversation, testified for the defendant, substantially as follows:

Q. What did the party talking over your phone say to you?

A. He said he had an order from Mr. Prouty, and he wanted to know what I thought about it.

Q. What question did he ask?

A. He wanted his standing in a general way,—financial standing.

Q. What did you tell him?

A. I told him he had been meeting his bills; that he had dealt with us some time and he owed us nothing; that he seemed to be honest, as far as I could say,—straightforward.

Q. What else did you tell him?

A. I think I asked him what was the amount of his shipment, and I think he said about $500,—something of that sort.

Q. What did you say to him?

A. I told him that probably he might be good for that, I wasn't certain about it, however.

This was all the evidence of any kind that was introduced upon the trial in relation to the alleged representations and statements made by the defendants, or any of them, to the plaintiff, as to the financial standing of Mr. Prouty. Further on the witness testified that Mr. Prouty had an account at that time at the bank; that it was not overdrawn; that he was not indebted to the bank anything at all; that he had heard no objections to Prouty's dealings; that he had paid his bills so far as he knew, and there had been no pending claims against him up to that time, to the bank, to his knowledge; that he had paid for everything, so far as he knew. The credit was finally given to Prouty on the last days of January and the first days of February, 1897. This evidence is quoted in full in order that a clear understanding may be had of the questions hereinafter determined.

1. The first assignments of error set forth in the plaintiff's brief are under the head of "Instructions," and are as follows: "Instruction No. 3, given by the court on its own motion, and in particular that portion which is as follows: 'But if it or its officer or officers attempted to give

such information, then it or its officer or officers were bound under the law to give honest information, such as was within their knowledge,'—plaintiff contends is not a correct statement of the law; and likewise instruction No. 4, given by the court on its own motion, and instruction No. 1, requested by defendants and by the court given, and instruction No. 7, requested by the defendants and by the court given." We ought not to be required to consider this assignment. It has been frequently held that where error is assigned in the giving and refusing of a group of instructions, and one of them is proper the whole assignment of error fails. No reason is pointed out, and no authorities are cited by which we can determine whether the position taken by counsel is correct.

2. The next assignment of error is as follows: "The first, second and third instruction asked for by plaintiff should have been given." We decline to consider this assignment of error for the reasons given above. It is claimed, however, that by one of these paragraphs the court was asked to instruct the jury that the statements set forth in paragraph five of the petition were not denied. We have examined this question, and hold that the request was properly refused, for the reason that no demurrer was ever filed to the answer, no motion to make it more specific and certain was ever urged; no objection was offered at the trial that it did not state facts sufficient to constitute a defense, but, on the contrary, it was always treated as though every allegation contained in the petition was suitably denied. It was decided in the case of *Rosenbaum v. Russell*, 35 Nebr., 513, that an answer, although faulty, will be held to be sufficient when assailed for the first time by a motion for a new trial. We think that rule is applicable to the facts in this case.

3. Errors are assigned for the giving of other instructions tendered by the defendant, and the refusal to give those tendered by the plaintiff. All of these instructions were directed to the main question of the liability of the defendants. By the instructions asked for by plaintiff

the court was requested to instruct the jury that if the
defendants made the representations set forth in the evi-
dence without knowing whether their statements were
true or not, and the plaintiff had relied thereon to its in-
jury, it would be entitled to recover. The plaintiff has
mistaken the law of this case. The statement made to its
agent, Elliott, by the defendant Murtey, when they con-
versed together by telephone, taken in the light of all of
the circumstances and interpreted by the plain import of
its language, can not with reason be considered as any-
thing more than a fair expression of his opinion of the
financial condition and worth of Mr. Prouty. Indeed,
from its very nature, it could not be anything else. In the
conversation Murtey gave Elliott all of the information
on that subject which he had himself, and on which his
opinion was based; and the plaintiff thereafter was as well
able to form an opinion as to the advisability of extending
credit to Prouty as was defendant Murtey, and these
statements in no way rendered him liable to the plaintiff
in an action for fraud and deceit. *Tryon v. Whitmarsh,* 1
Met. [Mass.], 1; *Marsh v. Falker,* 40 N. Y., 562; *Meyer v.
Amidon,* 45 N. Y., 169; *Cowley v. Smyth,* 50 Am. Rep. [N.
J.], 432. In the case of *Tryon v. Whitemarsh, supra,* which
was an action for false and fraudulent representations as
to the credit of third persons, whereby the plaintiffs were
induced to give them credit, a verdict for the plaintiff was
set aside for the reason that the judge should have in-
structed the jury that the defendants would not be liable,
if they were of the opinion, from the evidence, that he gave
an honest opinion, and believed that the persons recom-
mended were trustworthy. The plaintiff's own evidence
in this case, therefore, would not sustain a verdict in its
favor and against Murtey. As to the defendant bank, the
evidence fails to show that it ever had any interest in or
anything to do with the matter in its corporate capacity.
Indeed, it is doubtful if, under its charter powers, it could
take any such part in the transaction as would create lia-
bility on its part. As to the defendant Louis Foltz, who

is described as the president of the bank, the evidence shows conclusively that he never knew anything about the transaction until more than three months after it took place, and after he had loaned Prouty some of his own money, and had taken a mortgage and a bill of sale to secure its repayment.

Therefore the evidence of the plaintiff was not sufficient to sustain a verdict against any of the defendants, and the court did not err in refusing the instructions asked for by the plaintiff. We are not called upon to examine any of the other assignments of error, and we recommend that the judgment of the district court be affirmed.

POUND, C, concurs.

OLDHAM, C., concurring.

I prefer to express no opinion on what is said in support of the first and second paragraph of syllabus, but I concur in the result for the reason that it is clear to my mind that the evidence contained in the record is not sufficient to sustain a judgment against any of the defendants. I think that the trial court would have been justified, at the close of plaintiff's evidence, in directing a verdict for the defendants.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.